# United States Tax Court

T.C. Memo. 2024-86

JOHN K. PAK,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

JOHN K. PAK AND KYUNG KUM PAK,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket Nos. 6395-18, 6397-18.                    Filed September 11, 2024.

————

*Robert Michael Galloway*, for petitioners.

*Edwin B. Cleverdon*, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, *Judge*: These consolidated cases arise from respondent's determining the following deficiencies, additions to tax, and penalties with respect to petitioners' federal income tax returns for 2010–12 and 2014–16 (years at issue):[1]

---

[1] Both John K. Pak and Kyung Kum Pak are petitioners in Docket No. 6397-18, which concerns the Notice of Deficiency issued for taxable years 2010, 2011, and 2012. Mr. Pak is the sole petitioner in Docket No. 6395-18, which concerns the Notice of Deficiency issued for taxable years 2014, 2015, and 2016.

| [*2] Year | Deficiency | Additions to Tax and Penalties | | | |
|---|---|---|---|---|---|
| | | § 6651(a)(1)[2] | § 6651(a)(2) | § 6654 | § 6662 |
| 2010 | $92,902 | $23,226 | — | — | $18,580 |
| 2011 | 46,730 | 11,683 | — | — | 9,346 |
| 2012 | 16,027 | 4,196 | — | — | 3,205 |
| 2014 | 88,506 | 18,729 | *[3] | $1,484 | — |
| 2015 | 142,260 | 31,534 | * | 2,520 | — |
| 2016 | 148,011 | 32,821 | * | 3,481 | — |

The deficiencies result from respondent's determinations with respect to petitioners' gross income and business expense deductions claimed on their returns for 2010, 2011, and 2012; and the substitutes for returns that respondent prepared on Mr. Pak's behalf for 2014, 2015, and 2016.

Petitioners have now conceded all income and expense adjustments as determined in the Notices of Deficiency. However, petitioners have raised additional claims for depreciation deductions for all of the years at issue and for contract labor deductions for 2015 and 2016 that were not claimed in their original returns, or allowed in the substitutes for returns, respectively. Petitioners have also conceded the additions to tax and penalties determined by respondent, to the extent of any deficiencies the Court ultimately redetermines. Thus, the remaining issues for decision are whether petitioners (or Mr. Pak individually) are (1) entitled to additional trade or business depreciation deductions for each of the years at issue and (2) entitled to additional

---

[2] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

[3] The Notice of Deficiency determined that for taxable years 2014, 2015, and 2016 the section 6651(a)(2) additions to tax would be computed at a later date.

**[\*3]** trade or business expense deductions for contract labor expenses for 2015 and 2016.[4]

## FINDINGS OF FACT

Some of the facts are stipulated and so found. The Joint First Stipulation of Facts and the Joint First Supplemental Stipulation of Facts from each case, and the Exhibits thereto, are incorporated herein by this reference. Petitioners resided in Alabama when they timely filed their Petitions.

During the years at issue Mr. Pak operated the Mikato Japanese Steak House (restaurant) in Gulf Shores, Alabama, through the Mikato Restaurant Group, LLC, of which he was the sole member. The restaurant was a Japanese hibachi and sushi restaurant operating in leased space in a shopping mall. The parties agree that it was a "high end" restaurant with hibachi grills, a 25-foot-long sushi bar, and a 16-foot-long martini bar.

During the years at issue, the restaurant's sales were effected almost exclusively through credit card transactions. Mr. Pak would often pay some of his workers in cash. To obtain the cash for this purpose, he would typically negotiate checks he had made out to "Cash."

Before the restaurant commenced operations in 2008, the location was an undeveloped, empty structure in the shopping mall requiring substantial, custom "build-out" improvements to create the features described above. Mr. Pak retained Case Construction Co. (Case) of Mobile, Alabama, to make most of the improvements. The improvements were permanent and would be retained by the mall owner in the event the lease ended. Mr. Pak contends that he paid $1,150,000 for the build-out and $400,000 for the purchase and installation of the hibachi tables, which were installed separately from the work done by Case. In addition, he claims he paid $100,000 for other fixtures and equipment, including the sushi bar, martini bar, tables, chairs, and kitchen equipment.

---

[4] At trial petitioners made generalized claims to an additional compensation deduction for 2014 but failed to specify the amount of any such deduction and subsequently failed to assert any such claim in their briefs. Given the cursory nature of these assertions, petitioners have forfeited any claim for an additional contract labor deduction for 2014. *See Rowen v. Commissioner*, 156 T.C. 101, 115–16 (2021) (collecting authorities); *see also* Rule 149(b).

**[*4]** Petitioners did not have records to substantiate these expenditures at the time of trial, which was 12 years after the build-out improvements were made.[5] However, on their joint federal income tax return for the 2008 taxable year, petitioners reported on an attached Form 4562, Depreciation and Amortization, that 7-year property with a basis of $285,000 and nonresidential real property with a basis of $1,380,000 were placed in service that year.[6] The 2008 return claimed a $14,605 depreciation deduction. The 2008 return also reported that the restaurant had gross receipts of $887,994. Petitioners' joint federal income tax return for the 2009 taxable year did not include Form 4562 but claimed a $113,903 depreciation deduction. A paid preparer prepared petitioners' 2008 and 2009 returns. Respondent accepted the 2008 and 2009 returns as filed and did not perform an examination, verification, or other substantive evaluation related to the claimed depreciation deductions.

Petitioners untimely filed joint federal income tax returns for the taxable years 2010–12. They prepared the 2010 and 2011 returns. The 2010 return attached Schedule C, Profit or Loss From Business, on which was claimed a depreciation deduction of $2,411. The 2011 return attached Schedule C on which no depreciation deduction was claimed. The 2012 return was prepared by a certified public accountant with the firm Johnson, Slaughter, Driver & Northcutt, PA (Johnson Slaughter), and attached Schedule C on which no depreciation deduction was claimed.

Petitioners failed to file returns for taxable years 2014–16. Respondent accordingly prepared substitutes for returns for Mr. Pak for those years.

On January 31, 2018, respondent issued Notices of Deficiency to petitioners for 2010–12 and to Mr. Pak for 2014–16.

---

[5] Mr. Pak testified that Case had ceased operations, that the return preparer that prepared his federal income tax return for the year the restaurant commenced operations (2008) had lost its records in a tornado, and that he did not retain any records by the time of trial.

[6] The Form 4562 lists November as the placed-in-service month for the nonresidential real property with the $1,380,000 basis. No placed-in-service month is listed for the 7-year property with the $285,000 basis.

Petitioners' certified public accountant testified that the nonresidential real property and the 7-year property represented, respectively, leasehold improvements and furnishings and equipment.

**[\*5]** After receiving the Notices, petitioners engaged Kenneth Thacker, a certified public accountant at Johnson Slaughter, to evaluate their tax liabilities for 2010–12 and 2014–16. In or about August 2018 Mr. Thacker prepared and submitted to respondent amended returns for 2010–12. The 2010, 2011, and 2012 amended returns claimed additional depreciation deductions of $190,106, $160,679, and $137,171, respectively. Mr. Thacker computed the foregoing amounts by extrapolating from the basis figures that petitioners reported on their 2008 return for property placed in service in that year. He did not independently investigate any records supporting the basis figures reported on petitioners' 2008 return.

In November 2018 Mr. Thacker prepared Forms 1040, U.S. Individual Income Tax Return, for petitioners' 2014–16 taxable years that were submitted to respondent in December 2018. The 2014–16 Forms 1040 claimed depreciation deductions of $121,173, $106,866, and $155,265, respectively. Mr. Thacker computed the foregoing amounts in the same manner as with the 2010–12 amended returns, namely, by extrapolating from the bases that petitioners reported on their 2008 return without independently investigating any records supporting those bases. The 2015 Form 1040 claimed a wage expense of $134,826[7] and a contract labor expense of $136,516. The 2016 Form 1040 claimed a wage expense of $102,052[8] and a contract labor expense of $155,265.

Respondent did not accept any of the amended returns or Forms 1040 Mr. Thacker prepared and submitted after the Notices of Deficiency had been issued.

The parties agree that the restaurant's gross receipts for 2015 and 2016 were $844,380 and $840,777, respectively.

OPINION

*Burden of Proof*

Generally, the Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of

---

[7] The parties have now stipulated that this is the correct figure for wages for 2015.

[8] The parties have now stipulated that the correct figure for wages for 2016 is $102,051, or $1 less than Mr. Pak claimed on the 2016 Form 1040.

**[\*6]** proving that those determinations are erroneous. Rule 142(a)(1); *Welch v. Helvering*, 290 U.S. 111, 115 (1933).[9]

Deductions are a matter of legislative grace, and a taxpayer must prove his or her entitlement to a deduction. *INDOPCO, Inc. v. Commissioner*, 503 U.S. 79, 84 (1992); *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934). A taxpayer claiming a deduction on a federal income tax return must demonstrate that the deduction is allowable pursuant to a statutory provision and must further substantiate that the expense to which the deduction relates has been paid or incurred. § 6001; *Hradesky v. Commissioner*, 65 T.C. 87, 89–90 (1975), *aff'd per curiam*, 540 F.2d 821 (5th Cir. 1976).

*Depreciation*

Section 167(a) allows a deduction for depreciation of property used in a trade or business. To substantiate entitlement to a depreciation deduction, a taxpayer must inter alia establish a property's depreciable basis by showing its cost. *See, e.g.*, *Cluck v. Commissioner*, 105 T.C. 324, 337 (1995). In the absence of documentary evidence substantiating the bases of the components of the restaurant build-out, petitioners cite Mr. Pak's testimony concerning the amounts he spent on the build-out and the basis figures reported on their 2008 return—which respondent accepted—and ask us to invoke the *Cohan* rule to allow the depreciation at issue. *See Cohan v. Commissioner*, 39 F.2d 540, 542–44 (2d Cir. 1930).

Generally, if a taxpayer demonstrates that he or she has actually incurred a trade or business expense contemplated by section 162(a) but is unable to adequately substantiate the amount, the Court should estimate the amount and allow a deduction to that extent. *Cohan v. Commissioner*, 39 F.2d at 543–44. Indeed, as the U.S. Court of Appeals for the Eleventh Circuit—to which an appeal in these cases would ordinarily lie—has observed: "[I]f it is clear that the taxpayer is entitled to some deduction, but he cannot establish the full amount claimed, it is improper to deny the deduction in its entirety." *Ellis Banking Corp. v. Commissioner*, 688 F.2d 1376, 1383 (11th Cir. 1982), *aff'g in part, remanding in part* T.C. Memo. 1981-123. But to allow a deduction under the *Cohan* rule, we must have some basis upon which to form an

---

[9] Because petitioners have not produced or maintained records adequate to substantiate the items in dispute, the burden of proof does not shift to respondent with respect to any such item under section 7491(a)(1). *See* § 7491(a)(2)(A).

[*7] estimate. *Vanicek v. Commissioner*, 85 T.C. 731, 742–43 (1985). This Court has applied the principles of the *Cohan* rule to estimate a taxpayer's basis in property. *See, e.g.*, *Ternovsky v. Commissioner*, 66 T.C. 695, 698 (1976); *Alameda Realty Corp. v. Commissioner*, 42 T.C. 273, 283 (1964); *Shank v. Commissioner*, T.C. Memo. 2018-33, at *6–7; *Huzella v. Commissioner*, T.C. Memo. 2017-210, at *7–9; *Wheeler v. Commissioner*, T.C. Memo. 2014-204, at *7; *King v. Commissioner*, T.C. Memo. 2006-112, *aff'd*, 252 F. App'x 951 (11th Cir. 2007). But "[i]n order for the Court to estimate basis, the taxpayer must provide some 'reasonable evidentiary basis' for the estimate." *Wheeler*, T.C. Memo. 2014-204, at *7 (citing *Grp. Admin. Premium Servs., Inc. v. Commissioner*, T.C. Memo. 1996-451).

We are satisfied that petitioners have shown that they incurred expenditures giving rise to depreciable bases in 2008. Respondent does not dispute that Mr. Pak retained Case to do the bulk of the build-out to what was essentially a shell. He concedes that Mr. Pak retained a different unidentified individual to build the hibachi tables. He further concedes that the restaurant was "high end" with a 25-foot-long sushi bar and a 16-foot-long martini bar, and that it commenced operations in 2008. Thus, petitioners have shown that they are entitled to *some* deduction, as they acquired real and personal property in building out a shell structure (and furnishing it) in a manner that was sufficient to commence operation of the restaurant in 2008. Such property had a useful life extending to some or all of the years at issue.

Petitioners having established that they acquired depreciable property, though lacking any substantiation of the expenditures they made in doing so, the more difficult question becomes whether they have provided some reasonable evidentiary basis upon which an estimate of their depreciable basis can be made.

Petitioners point to Mr. Pak's testimony and their original 2008 return, on which they reported (with respect to the restaurant) placing into service that year nonresidential real property with a basis of $1,380,000 and 7-year property with a basis of $285,000. Mr. Pak testified that he paid $1,150,000 to Case for its build-out work, $400,000 for the construction of the hibachi tables, and approximately $100,000 for the sushi bar, martini bar, and other restaurant equipment. His testimony is substantially consistent with the basis figures reported on the 2008 return.

8

[*8]   As for the 2008 return, respondent accepted it as filed. As a consequence, assuming the period of limitations for that year has run, respondent is now bound by those basis figures for purposes of petitioners' 2008 federal income tax liability. But those figures do not bind respondent, or otherwise establish petitioners' depreciable bases, for purposes of the later years now before us. Instead, under section 6214(b), we examine such facts pertaining to petitioners' 2008 tax liability as may be necessary to correctly redetermine any deficiency for the years at issue.

A tax return itself does not establish the truth of the matters asserted therein, *Lawinger v. Commissioner*, 103 T.C. 428, 438 (1994); *Roberts v. Commissioner*, 62 T.C. 834, 837 (1974), and we have been unwilling to attach significance to a taxpayer's prior year returns to establish a basis estimate under the *Cohan* rule "in the absence of corroborating evidence," *Wheeler*, T.C. Memo. 2014-204, at *8. Here, however, there is evidence to corroborate the basis figures claimed on the 2008 return; namely, the undisputed fact that petitioners undertook the build-out of a shell structure into a "high end" restaurant that commenced operations in 2008. The 2008 return was prepared by a paid return preparer. While the return preparer was under no obligation to verify the amounts petitioners indicated they had paid to create the nonresidential real property and 7-year property associated with the restaurant, *see* Treas. Reg. § 1.6694-1(e)(1), we believe the figures nonetheless constitute roughly contemporaneous estimates by Mr. Pak of the amounts expended.

The figures on the 2008 return appear reasonable. They did not attract respondent's attention and trigger an audit, nor do they appear unreasonable for a restaurant with reported gross receipts of $887,994 for 2008.

Nevertheless, the *most* that can be said for the basis figures on the 2008 return is that they are unsubstantiated estimates. And under the *Cohan* rule, we "make as close an approximation as [we] can, bearing heavily . . . upon the taxpayer whose inexactitude is of his own making." *Cohan v. Commissioner*, 39 F.2d at 544. Applying this principle, we hold that petitioners (or Mr. Pak individually) are entitled to depreciation deductions for the years at issue in accordance with a 2008 basis in nonresidential real property and 7-year property of $690,000 and

**[\*9]** $142,500, respectively—that is, one-half of the amounts claimed on the 2008 return.[10]

*Contract Labor*

Under section 162(a) a deduction is allowed for "ordinary and necessary expenses paid or incurred . . . in carrying on any trade or business." An ordinary expense is one that commonly or frequently occurs in the taxpayer's line of business. *Deputy v. du Pont*, 308 U.S. 488, 495 (1940). A necessary expense is one that is appropriate and helpful in carrying on the taxpayer's business. *Commissioner v. Heininger*, 320 U.S. 467, 471 (1943); Treas. Reg. § 1.162-1(a). Section 162(a)(1) authorizes a deduction for compensation expenses that are (1) reasonable in amount, (2) based on services actually rendered, and (3) actually paid or incurred. *Eller v. Commissioner*, 77 T.C. 934, 962 (1981); Treas. Reg. § 1.162-7(a).

The parties have stipulated that Mr. Pak is entitled to deduct wage expenses of $134,826 and $102,051 for 2015 and 2016, respectively. The parties also agree that the restaurant's gross receipts for 2015 and 2016 were $844,380 and $840,777. Mr. Pak claims additional contract labor expenses of $136,516 and $155,265 for 2015 and 2016, respectively, which respondent disputes for lack of substantiation.

Mr. Pak contends he incurred substantial additional compensation expenses (beyond the stipulated wage expenses) attempting to attract and retain, in a competitive hiring market, chefs with the skills required for a hibachi and sushi operation. He testified that to retain such chefs he made cash payments to them in addition to their wages. According to Mr. Pak, since the restaurant's transactions with customers were almost exclusively through credit cards, there was no cash available to make these payments to the chefs. To obtain the cash, Mr. Pak testified, he wrote checks to cash, cashed them, and used the proceeds to make the extra payments to the chefs.

Mr. Thacker testified concerning how he arrived at the contract labor expenses for 2015 and 2016 that are in dispute. He was a forthright and credible witness. To determine the amounts of cash that

---

[10] We anticipate the parties will calculate, as part of their Rule 155 computations, the allowable depreciation for each of the years at issue premised upon our holding with respect to the amounts of the bases petitioners have established for 2008.

**[\*10]** had been paid to the chefs, Mr. Thacker testified that he reviewed Mr. Pak's bank records to identify any check made out to cash that had in its memo line "payroll," "salaries," or "cooks."[11] The totals for such checks in 2015 and 2016 were the amounts now claimed as contract labor expenses.

Mr. Thacker further testified that he reviewed the total labor cost he estimated the restaurant paid (i.e., the sum of the contract labor expense he calculated and the wage expense the parties stipulated) as a percentage of sales (gross receipts) and that the cost was approximately within the restaurant industry average of labor costs; namely, 28–30% of sales. (As calculated by Mr. Thacker, the restaurant's percentage for 2015 is 32% and for 2016 is 31% of gross receipts.)

Although respondent did not object at trial to Mr. Thacker's testimony concerning restaurant industry standards for labor costs, on brief respondent contends that this testimony is expert testimony and Mr. Thacker testified only as a fact witness. Under Rule 143(g)(3), we may consider expert testimony without the witness' having provided an expert report where the witness "testifies only with respect to industry practice." In the absence of a party's timely objection, we have considered expert testimony of this nature even where the witness was not listed as an expert before trial, *see Schmidt v. Commissioner*, T.C. Memo. 2014-159, at \*28–29, and we do so here. Mr. Thacker had 30 years' experience in accounting and appeared knowledgeable regarding the restaurant industry.

On the basis of his and Mr. Thacker's testimony, we conclude that Mr. Pak has satisfied his burden of showing entitlement to contract labor expenses of $136,516 and $155,265 for 2015 and 2016, respectively.

*Conclusion*

To reflect the foregoing,

*Decisions will be entered under Rule 155.*

---

[11] He also reviewed the restaurant's Forms W–2, Wage and Tax Statement, Forms 940, Employer's Annual Federal Unemployment (FUTA) Tax Return, and Forms 941, Employer's Quarterly Federal Tax Return, to ensure there was no duplication.